We are now ready to hear argument in our first case, Dillon v. Generations Federal Credit Union, unless you have something to share with us. No, no. Thank you, Your Honor. Just to explain, this was three consolidated appeals, but two of them were resolved yesterday, and so the only appeal that remains is 16-1362. Thank you. Yes, please proceed, Mr. Randlett. Thank you, Your Honor. I'm counsel for BMO Harris, and this is an appeal from the denial of BMO Harris's motion to compel arbitration. Plaintiff James Dillon, as the Court may recall from the last time this case was here, alleges that he borrowed money online from various payday lenders that are chiefly operated by different Native American tribes. He alleges that the terms of those loans violate the usury law of his home state of North Carolina, but rather than sue the lenders, he instead has chosen to sue some of the banks that were in the chain that processed the automated clearinghouse fund transfers that moved the money back and forth between the lenders and Mr. Dillon's bank account. In this case, when BMO Harris moved to compel arbitration, the district court denied the motion because of a tribal choice of law clause in the loan agreement. Even though BMO Harris had agreed to arbitrate under U.S. law, the district court held that the choice of law clause impermissibly waived Mr. Dillon's federal statutory rights under RICO, the statute that he's suing under. How do you get around the Hayes opinion? Thank you, Your Honor. The Hayes decision, of course, is the one that Judge Eagle cited in her decision, and I believe that it's distinguishable for two key reasons. But first, just to explain the Hayes decision. It's a situation a lot like this one in that it involves a loan agreement with an arbitration. We're familiar with the Hayes opinion. And Hayes says that severance should not be used to accomplish what had – let me use Judge Wilkinson's words or quote them directly. Severance should not be used when an agreement represents an integrated scheme to contravene public policy. And why isn't that exactly what you're asking? You're asking to sever the portion of the contract, take out the portion that says that federal law doesn't apply, and have the rest of your contract apply with regard to the arbitration. I disagree, Your Honor. Severance is a contract law doctrine that comes into play. Could I just clarify, what exactly are you disagreeing with? Are you disagreeing with Hayes, or are you disagreeing that it's not in contravention for some reason because of the factual distinction? The latter, Your Honor. I think we should have won under Hayes. Okay. How? The reason, Your Honor, is because Hayes confirms that Mr. Dillon, in fact, bore a burden of proof to show that he actually would be deprived of a federal statutory right in arbitration. And it did so because it cited the Mitsubishi case as the source, the ultimate source of the prospective waiver of statutory rights doctrine. Mitsubishi is followed by a series of Supreme Court cases that recognize that when somebody is objecting to a foreign choice of law clause, the proper course is typically to send the case to arbitration to see what happens in the arbitration, because maybe the scenario that the plaintiff fears, that they would be deprived of their rights because they're forced to arbitrate under some foreign law, might not come to pass. Perhaps the arbitrator will decide, nonetheless, to apply U.S. law, or perhaps a comparable remedy is available under foreign law. Now, the key distinction in Hayes, and I would, Judge Keenan, like to get back also to your severance question. I'm really worried that what you're asking to do is to change the terms of the contract. And I don't think we can do that. But please address that. Yes, Your Honor. Severance, I agree. If this were a question of whether the choice of law clause could be severed, Hayes would be a difficulty. But that's not what I'm asking this Court to do. Severance is that contract law doctrine that comes into play once a choice of law clause or some other contractual term has been determined to be unlawful. But we're raising a threshold question of whether the choice of law clause even applies. And that's widely recognized. When the parties to a dispute agree what law should be applied to a particular issue, it does not matter whether there's a choice of law clause. The Court ---- So you're asking to change a contractual term. What is this, then? Is this an oral modification of the contract? Neither, Your Honor. It's not a change or alteration of the contract at all. It's simply an application of ---- Oh, I'm sorry. I'm sorry. Excuse me. I didn't mean to cut over you there. But the contract says neither this agreement nor the lender is subject to the laws of any State. No other State or Federal law or regulation shall apply to this agreement. So you're asking to change the terms of your contract, right? No, Your Honor. We're asking that the arbitrator be permitted to apply the usual choice of law rule whenever any choice of law clause is at issue in any tribunal. The first question is, is there actually a conflict of law? Is there actually a disagreement about what law applies? If both parties want U.S. law to be applied, a court or arbitrator wouldn't insist on applying tribal law. And there's an additional reason why the severance idea cannot ---- is not an impediment here. And it's because that would be inconsistent with the Supreme Court's decision in Mitsubishi. Mitsubishi involved a very similar scenario because it was, again, an arbitration agreement where there was a foreign choice of law clause. The defendant agreed for the first time during oral argument in the Supreme Court to allow the arbitration to proceed under U.S. law. And that was enough, according to the Supreme Court, to send the case to arbitration. That's the principle that governs ---- But that wasn't a situation where the parties had entered into an agreement that the courts had already struck down as contrary to public policy. There was an agreement with a foreign choice of law clause. Right. But it wasn't an agreement where the ---- I mean, it wasn't an agreement where a court had held that the contract was little more than an attempt to achieve through arbitration what Congress has especially forbidden. It was simply a choice of foreign law. So I'm not sure that's quite on point. Well, no court has determined that this agreement either is unlawful. Now, I can understand why a tribe, when it's the party, might want to have tribal law applied. And I understand that it looks a little bit different when the arbitration instead involves two United States entities like it does in this case, which is why we all want the arbitrator to apply U.S. law and why not just Mitsubishi. I'm sorry, Your Honor. You have a question? No. I'm trying to understand at which point I'm losing you. We're talking about a non-party to this agreement, which is part of the problem with this entire case. But even if the parties can't agree, it still comes back to Judge Keenan's question. It's still hard for me to see how the fact that the parties want U.S. law somehow elevates that question to not a question of conflict of laws. You see what I'm saying? I don't understand how you can take what is essentially, even if the parties agree, it appears to be in contravention of the contract, why that turns it into something other than a conflicts of laws question. Well, I mean, to begin with, that's exactly what happened in Mitsubishi. There was a contractual foreign choice of law clause. The parties both agreed before it was enforced that they would both ask the arbitrator to apply U.S. law. That was enough to send the case to arbitration. But although parties may agree that they want U.S. law to apply, they certainly don't agree that they want to go to arbitration under applying U.S. law. Do they? I believe that they do. I believe that they do. I think at bottom there's this discomfort with this case because of the feeling that the arbitration agreement is being used to insulate anybody from liability, you know, the defendants, the lenders from liability. If I understand Your Honors correctly, that's the underlying concern. But there's no meaningful risk here that Mr. Dillon would be deprived of any statutory rights in arbitration. If it goes forward in arbitration, both parties would be asking the arbitrator to apply U.S. law. The arbitrator would have the power. But your Mitsubishi involved parties to the agreement. This is an understanding between, you're referring to an understanding between, and correct me if I'm wrong, between a party to the agreement and a non-party to the agreement. That's correct, Your Honor. But that distinction doesn't make a difference here because in, neither in Mitsubishi nor in this case is the, is this a modification of the arbitration agreement. Instead, this is how the parties are responding to the contention that the arbitration process will forbid the plaintiff from vindicating. How can you say this isn't a modification of the arbitration agreement? I mean, that's your only hope, that it is a modification of the arbitration agreement and that you've got some valid legal basis for changing the party's initial agreement. Of course it's a modification. I disagree. It's more of a mooting of an objection under the prospective waiver doctrine, which, of course, the Supreme Court held in Mitsubishi should be permitted. In addition, I disagree that it's perfectly abundantly clear that the choice of law clause binds the arbitrator to apply tribal law no matter what. The contract is replete with language that says that the agreement shall be governed by tribal law, the arbitrator shall apply tribal law. But that's just a general description of what choice of law clauses always say. How about no federal law or regulation shall apply to this agreement? I agree. That's another way of saying we want tribal law applied. But that kind of language has never been held to bar a court from inquiring into the threshold question of whether the choice of law clause is unenforceable. The arbitrator could set it aside, and we certainly would join in that request. We want U.S. law to be applied in arbitration. Third, there's another interesting question lurking here, and it's the assumption by Mr. Dillon that he has no rights under tribal law, that all tribal law offers no rights. And that simply is not the case. There's a longstanding presumption in the Fourth Circuit and in other courts that foreign law should be presumed to be exactly the same as United States law unless the proponent of the difference proves it. And nobody is going to come forward, certainly nobody has so far, to say that with respect to RICO, tribal law is any different. Mr. Dillon, if this case goes to arbitration, Mr. Dillon is going to be able to vindicate and pursue and present his RICO claims, and they would be able to be resolved on the merits under United States law. And given that, there is no ground under the Federal Arbitration Act for refusing to enforce the arbitration agreement. I can understand the policy desire to have a prophylactic rule that would per se invalidate foreign choice of law clauses in consumer arbitration agreements. So you're saying that if we get to arbitration, which is really the big threshold question, the parties would agree that U.S. law should apply? Yes, Your Honor. And so you're saying that before we decide the choice of laws question, or before we get to it, we should decide whether, as a threshold matter, the language regarding tribal law should only come up after the matter goes to arbitration? Yes, in the sense that if there's any uncertainty about what will happen in arbitration, if there's any uncertainty at all about whether Mr. Dillon would be permitted to present his U.S. law claims and have them ruled on the merits. Well, how on earth can it not at least be uncertain? Well, there's a rule, Your Honor, about what to do when it is uncertain, and that comes from Pacific Air. Well, is there a rule about what makes it uncertain? Because it seems to me that the contract itself is pretty clear about the choice of law that at least it provides for. Yes, Your Honor. There is a rule about that. That's the Pacific Air case as well. In that case, the contract barred claims for punitive damages. But how do you have an enforceable agreement to arbitrate? It seems to me you're doing a lot of verbal shuffling, and you're not telling us how you have an enforceable, how your contract to arbitrate, the one that's into whose shoes you stepped into, why that's enforceable. Why is it enforceable? It's enforceable under the Federal Arbitration Act. The way to, the defense that's being raised to its- You said in Hayes that the contract is not enforceable. Well, I disagree. There's a difference between this case and Hayes. Very similar language. Very similar. I agree, but there's a difference. And here's the difference. In Hayes, the plaintiff satisfied their burden of showing that they would be deprived of Federal statutory rights in arbitration. Mr. Dillon has never attempted to show that he would satisfy that burden. And that's his burden. I apologize, Your Honor. I'm out of time, but if I may respond. Please go ahead. And I do have one more follow-up question, which comes at it a little bit differently. In your, you posit that all of the parties agree that U.S. law should apply in arbitration. Do all of the parties agree on going to arbitration? No. No, Your Honor. Right. So the wrinkle here is being introduced by a non-party. And you're saying at the threshold level to the entire process of determining, having the arbitrator determine whether the agreement is unenforceable. Do you see what's troubling me? There are a couple of things that I find hard to unravel, which include the fact that this effort is being made by a non-party and seems to elide the very critical point of whether or not the parties have to arbitrate to determine whether the arbitration agreement is unenforceable. I think I understand the difficulty, Your Honor. The way to resolve it is in several parts. So part one is the general rule that the enforceability of an arbitration agreement is normally a separate question and is the only one that can be considered by the court. And challenges that have to do with the merits, and normally choice of law questions involve that, are deferred. But when the choice of law clause is being used as the reason for challenging the enforceability of the agreement, the Weimar case, the Mitsubishi case, all the decisions cited in Hayes make clear that that's fair game, but the plaintiff must make a showing. This Court described as a substantial burden in the Cotton Yarn case that they actually would be deprived of their rights, and there's no such showing here. I see what you're saying. Thank you, Your Honor. Mr. Zavarri? Good morning. May it please the Court, Hassan Zavarri for appellee, Mr. Dillon. I'd like to start where I believe the Court has placed its greatest emphasis so far, where the panel has placed its greatest emphasis so far, which is Hayes, and how this case is directly on all fours with respect to Hayes. And I think the critical issue with respect to Hayes is that it cannot be parsed. The Fourth Circuit made it explicitly clear that the reason it can't be parsed is because the whole contract, the contract itself in and of itself is a farce, and it's a farce designed to contravene public interest and designed to allow these lenders and their allies. Notably, that decision talks specifically not just about the lender, but talks about the allies, that the whole point of the contract is to allow the lender, the illegal payday lender and its allies to engage in an unlawful scheme. And the Court aptly noted that, yes, the FAA establishes a liberal federal policy favoring arbitration, but that this agreement was designed to, quote, game the entire system. And what we have not heard from Mr. Ranlett, respectfully, is how this agreement is any different. What we've heard is that, for some reason or another, the parties both agree that U.S. law should apply. Well, that's neither here nor there. It's the same argument that was made in Hayes, where the Delbert Services argued that you could just sever the choice of law provision. You can't. It's part and parcel of the entire agreement, which, again, this Court described as a farce. And Mr. Ranlett suggested this agreement might be somewhat different, and in their briefs, BMO argued that this agreement is different because it doesn't use the word only in one provision. And I would just take a moment to direct the Court's attention to Joint Appendix 180, under the very first part of the agreement, where it says, the loan agreement is subject solely to the exclusive laws and jurisdiction of the Otoe Missouri Tribe of Indians. And then it goes on to say, at the same paragraph, that the parties further agree that no other State or Federal law or regulation shall apply to this agreement. So to the extent that they didn't use the word only, they used the word solely, and throughout the agreement, which is different in some very minor respects from the agreement in Hayes, but is substantially similar in all other ways, it's clear that no other law other than the Otoe Missouri law can apply. Is there any problem presented by the fact that the party here, BMO Harris, was not a party to that agreement? Does that cut either way? It does, Your Honor. It cuts in favor of affirming Judge Eagle's decision. And why is that? Well, because what BMO Harris is trying to do is alter the contract that they're not a party to. And they can't, I'm sorry. Yeah, and I know I'm not making it clear because I'm not sure it's entirely clear to me. That BMO Harris has a threshold problem with not being able to, is trying to compel arbitration on an agreement to which it was not a party. So it seems to me that I do see some distinction, I'm just not sure how to factor it into the analysis, that they are initially troubled by being bound by this law at all. So they're trying to determine whether the presumptions, and Mr. Randlett's going to tell me I'm all wrong, but they're trying to avail themselves of the presumption in favor of the arbitrability of an agreement, with which I'm sure you agree. Absolutely. That's pretty clear. Yes. So he's saying that that's the question writ large that has to be determined before you get to the, I think he's saying that that's the question that has to be decided before you get to the question within the arbitration agreement of its unenforceability as a matter of public policy. So if you could help me, I understand Hays. I completely get Hays. And it seems to me quite correct that the language in Hays is largely indistinguishable from the language here. But that does not seem to me to go to what BMO Harris is saying. Isn't that what you heard this morning, that they're saying that Hays doesn't really, I think they're saying, that Hays doesn't really come into play because the threshold question is whether or not you get to arbitration enjoying the presumption in favor of arbitration before you decide whether the agreement at issue is enforceable. Now, I don't know, I'm not saying that's correct. I'm just saying that that's what I understand. And again, perhaps wrongly, the argument to be. That's not an argument that I recall from the briefs, Your Honor. And it's not an argument that I, I'm sorry. No, no. It's not really an argument that I understand to be with, to have any sort of weight because the matter is. I'm sorry, I thought you were going to say it was weight because it wasn't. Weight, to have any weight. Right, I missed, yeah, I was assuming you were going someplace else. Yeah, the reason that I don't think that it has any weight is because they have relied upon this arbitration agreement from the very beginning. This is the agreement that they're claiming gets them into arbitration. Right, but that's not inconsistent with what I'm saying. They're still trying to get to the arbitration agreement. We're still trying to get there? No, they are still trying to get to the arbitration agreement itself. Right. Which does enjoy a presumption of validity under the FAA. Yes. And I'm not arguing, you understand I'm not making this argument. I'm simply asking you to, to the extent that you can, because I think I've got a grip on Hayes. But I'm trying to get some help from you in explaining and responding to the argument of why Hayes might not control. And you don't see any, I mean you're just not. Frankly, Your Honor, I just don't, I don't understand the argument at all. Okay, that's fair. It just, that, your Hayes argument, I know what you're going to say in reliance on Hayes. So I was interested to see if you could enlighten me on this other question I am now wrestling with, that's all. I'm sorry, Your Honor, I'd ask if you could maybe, maybe I'm being dense. I just don't understand the argument. I think I don't understand it well enough to communicate. Okay. And it wasn't in the briefs and so I think it's something that's new here. Yeah. I would say to the extent that there. Can I ask you one question? Yes, please. So is it a fair statement of your position that they're seeking to modify the terms of an illegal contract that they weren't a party to in order to enforce that contract to get them into arbitration? I couldn't have said it any better. Thank you, Your Honor. That's absolutely right. I just want to make sure that that's. That's absolutely right. Okay. And Hayes made it clear that you cannot do that because what you're trying to do is take a contract, the whole purpose of which is to circumvent the law. And so they are, no matter what we're hearing today from Mr. Ranlett about how they're not really trying to rely on the arbitration agreement, well, of course they are. They're trying to go to arbitration and the only basis for doing that is an agreement that Hayes has already held is completely unlawful, that no parts of that agreement can be resurrected. He's saying it's not unlawful if you get there because the parties all agree that federal law applies. Well, that's inaccurate as a factual matter. First of all, there's been no agreement. There's nothing pointed to in the record showing that there's an agreement that all parties agree to anything. There's no discussion of waiver of the law of the Otoe Missouri tribe. There's just no such thing. So to the extent that he claims that there's an agreement, and I would say also he talks about Mitsubishi. He says that in Mitsubishi that there was an agreement in the oral argument. I think it's really important to distinguish these. And I think Hayes and Judge Keenan, you were on that panel, so I'm sure you dealt with this issue. But those Supreme Court decisions are very different because they deal with U.N. convention where there are two separate opportunities, two causes of action in order to challenge an arbitration. And the second point is the point at which you argue that the arbitration would or would not have deprived the And I just want to read a quote quickly from Mitsubishi, which I think undermines the idea that Mitsubishi supports BMO Harris's position. We merely note that in the event the choice of form and choice of law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning as against public policy. And there's even similar language by Justice Scalia in the FedEx case, the American Express case, where he said that the effective vindication exception, quote, would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. So it's not just Hayes, Your Honor. I mean, Hayes is based on this fundamental principle that you cannot just take away all federal laws. You can choose laws, but you cannot prospectively waive the entire rubric of the American jurisprudence and federal and state law. It's just not appropriate to do that. Because what happens in choice of law decisions, as these courts speak, including Mitsubishi, is that even though there's a choice of law provision, the judges or the arbitrators are going to have to apply that choice of law provision. And it may end up turning out. I've had cases where I've had a choice of law provision that ended up applying law from another state because the choice of law provision analysis dictated that it do so. So what you can't have is something that hamstrings the arbitrator from being able to follow the law where it takes it. Another point that I want to mention with respect to this idea that the parties have agreed to U.S. law. That's not what the agreement says, right? But in addition, let's say the parties did agree to U.S. law and we had an arbitration and the arbitrator made a decision in favor of Mr. Dillon under U.S. law. What would happen next? Well, what would happen next is that to the extent that we sought to enforce that, we would have to go to tribal land to try and enforce that agreement because that's what this agreement provides. So there is no outlet. There is no opportunity to get this to a U.S. court except now. This panel stands in the best position to do that. I'd also like to address something that is not in the briefs, but I wanted to make sure the court was aware of, which is. Is it in the record? It is in the record, Your Honor. At the evidentiary hearing in which the parties were seeking to, in which the banks were seeking to enforce these arbitration agreements, BMO Harris did not bring a witness to authenticate the agreement. Now, as you recall from the last time we were here, this court held that they had an opportunity. Their motion for reconsideration should be granted. And that's an issue against BMO Harris as well? Yes, it is, Your Honor. And BMO Harris did not, and I'll point you to JA 857, which is the section from the hearing transcript, where Judge Eagles points out that they did not bring a witness to authenticate the agreement. Now, she did not make that decision based upon authentication. She made authentication rulings with respect to Bay Cities, which is no longer before us. But I would submit, Your Honor, that if the court has some question about this in Hays, obviously this court can affirm on any other basis which it deems fit and that that is another viable basis for affirming or, at a minimum, remanding to Judge Eagles and asking her to make that determination, which she did not make because she felt that Hays was controlling. I would close, if there are no other questions, I would close by saying that what we have here is a case against a bank that is doing everything it can to rely on an agreement that this court has already held, is designed to undermine Federal law and to... No, this court has already held that with respect to this agreement. Well, fair enough, Your Honor. I understand your point, but don't overstate. Fair enough. Let me say it this way. BMO has shown no material distinctions between the agreement in Hays and the agreement here. And so, to the extent the court agrees with Apolli that the agreements are identical in effect, it is, again, an agreement that is a farce. It is designed to allow BMO and its allies, including the tribe, to engage in unlawful conduct. How would we get to the authentication issue with respect to BMO Harris? Did the district court rule on it with respect to BMO Harris? With respect to what issue? The authentication issue. She did not rule. She did not. The only thing she ruled on with respect to BMO Harris is Hays. That's correct. Thank you, Your Honors. Thank you. Thank you. Thank you. Just a few quick points. The problem that, Judge Keenan, you voiced about severance, I think I understand the best way to Let's move away from severance. Just tell us how you can modify a contract to which you're not a party and have it enforced against somebody who is opposing the enforcement of the contract. It's because it's not a modification. And let me explain what I mean. Suppose the panel is presented with a choice of law clause. The very first question that the panel might have, because all courts, when they are initially confronted with a question of law, their default assumption is the forum law applies unless I'm supposed to apply some other rule under general conflict of law principles. So if the panel is presented with a conflict of law, a choice of law clause, the first question they're going to have is, well, what's different between this law and that law? Do I even need to look at this? And the answer here is no. Nobody's ever shown any difference. We don't know, Your Honor. Mr. Dillon has never said that there's not tribal RICO law. This is a different tribal law. There's something unseemly about the notion that we should automatically assume that tribes have no law on any subject. But it's still not federal law, which is what they are entitled to. Our comedy doesn't usually extend that far, does it? I disagree, Your Honor. The Supreme Court's made this repeatedly clear. If you can get the same remedies under foreign law. You can be required to relinquish substantive federal rights? Well, you wouldn't be relinquishing them because you'd be getting the same relief under foreign law. This Court explained that in the Aguerao decision, which involved Philippine law. If the law of the Philippines offered the same relief and remedies as federal law, the plaintiff's not being deprived of anything. And then second, under Hays, under the prospective waiver doctrine, the question that faces the Court is not, do I like the choice of law cause? The question is, is there a risk that if the plaintiff were told to go arbitrate, that he would actually be deprived of a federal right? And there's never been a showing of any meaningful risk here in light of the fact that has come forward with any showing that tribal law is different. Now, lastly, I want to address, what happens if the arbitrator goes off the rails? I think it's unlikely it's going to be a North Carolina arbitrator. But let's suppose that that happens. What happens next? Mr. Dillon's counsel suggested that this case would somehow go to tribal court. I don't see how that's possible, given that Judge Eagles, if the district court enters an order compelling arbitration, Judge Eagles retains jurisdiction to confirm the award. So if the arbitration goes off the rails, it comes back to Judge Eagles, and she can set it aside if the result is actually against public policy. But this contract, the arbitration contract that you're asking to be enforced, how does it not renounce the authority of the federal statutes? Forget about your concession and attempt to modify the contract. How does it not renounce the authority of the federal statutes, just as the contract in Hays did? Well, that relies on assumption that tribal law with respect to RICO. Federal statutes, not that tribal law doesn't have substantive provisions, but the import of Hays was that you cannot renounce the authority of the federal statutes in an agreement to arbitrate. How does your contract, the Western Sky contract, or I'm sorry, Great Plains contract, well, in any event, your contract, I'm sorry if I'm mixing them up. How does not your contract not renounce the authority of federal statutes? You're trying to concede that problem away. I understand that. But how does the written terms not renounce the authority of federal statutes? There's a difference, Your Honor, between a foreign choice. There is nothing illegal about a foreign choice of law clause. No, no, no. You need to answer the question. I'm sorry, Your Honor. Hays is concerned. Hays says that you cannot renounce the authority of federal statutes in an agreement to arbitrate. Okay? How does the agreement to arbitrate that you're advancing before this Court not renounce the authority of federal statutes as proscribed by Hays? In the actual arbitration, Mr. Dillon, would be? No, the agreement, the words of the agreement. The words of the agreement instruct the arbitrator to apply tribal law. But they also renounce the authority of federal statutes. I apologize. I've run out of time, if I may. Well, no. Just answer the question. Either they renounce the authority of federal statutes or they don't. There's an ambiguity in the agreement, Your Honor. Please. It would just go so much more smoothly if you would deal with federal statutes and how the choice of laws provision in the contract applying tribal law doesn't undercut or eviscerate the ability to proceed under federal statutes. This, Your Honor, is the same as Pacificare, where there was an agreement that renounced a statutory remedy. But because it was uncertain. I'm sorry. I don't think we're communicating. Do you think we're communicating? I don't. Well, you go ahead. No, no, no. That's fine. I've got the answer to my question. I mean, I don't believe the question's been answered. If you want to, your red light is on. If you would like to conclude in a couple of minutes, that would be fine. I appreciate the courtesy, Your Honor. Sure. And I'm sorry that I'm just not. I think we're talking past each other for some reason. And I'm sure, as is the case with most communications issues, bilateral. I think, Your Honor, the best analogy to this case and why it's different than Hays and should lead to a different result is Pacificare, an agreement that had a contractual provision that renounced a statutory remedy. But because the court was not convinced that the statutory remedy would actually be unavailable, it was possible that the arbitrator might nonetheless allow treble damages under RICO to be awarded. The court held that the proper course was to compel arbitration and see what the arbitrator does. That's what we're asking this court to do, to follow Pacificare. Thank you very much. Thank you, Your Honor. We'll come down and greet counsel and proceed directly to the next case.
judges: Allyson K. Duncan, Barbara Milano Keenan, Stephanie D. Thacker